UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| GARRY MASON, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:06-cv-258-RLY-TAB |
| | ) | |
| CITY OF INDIANAPOLIS, | ) | |
| INDIANAPOLIS POLICE DEPT., | ) | |
| SHERYL McGLINSEY, JERRY BARKER, | ) | |
| ANDREW STARKS, THOMAS | ) | |
| HILDEBRAND, and METROPOLITAN | ) | |
| DEVELOPMENT COMMISSION, | ) | |
|     Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I.     Introduction

Plaintiff, Garry Mason ("Mason"), brought this action under 42 U.S.C. § 1983 and

Indiana state law against the City of Indianapolis, the Indianapolis Police Department

("IPD"), the Metropolitan Development Commission ("MDC"), Jerry Barker ("Chief

Barker"), the former IPD Police Chief, and Sheryl McGlinsey ("Detective McGlinsey"),

Andrew Starks ("Detective Starks"), and Thomas Hildebrand ("Detective Hildebrand"),

all detectives with the IPD, (collectively "Defendants"), alleging that Defendants violated

his rights in searching his home and effecting his arrest on March 15, 2004.  Defendants

move for summary judgment on Plaintiff's complaint pursuant to Federal Rule of Civil

Procedure 56.  For the reasons set forth below, the court **GRANTS** Defendants' motion.

1

## II.     Preliminary Matter

In his Response, Mason cites the affidavit of Thomas Farlow, Mason's criminal defense attorney, as an "expert witness" about the meaning of Indiana Code § 35-33-5-2 and whether probable cause existed to issue a search warrant for Mason's house. Defendants argue that this testimony should be excluded.  The issues about which Farlow seeks to testify are not factual issues where specialized knowledge will assist the trier of fact to understand the evidence.  *See* FED. R. EVID. 702 (defining when the use of expert testimony is appropriate).  Further, the meaning of a statute and the existence of probable cause on undisputed facts are questions of law.  *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994) (meaning of a statute); *Smith v. Lamz*, 321 F.3d 680, 684 (7th Cir. 2003) (existence of probable cause on undisputed facts).  Questions of law are to be resolved by the court, not an expert witness.  *Bammerlin*, 30 F.3d at 900.  As such, Farlow's opinions on the meaning of § 35-33-5-2 and the existence of probable cause are immaterial to the court's decision on the present motion and will not be considered.

## III.    Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a

verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Some

alleged factual dispute that does not rise to a genuine issue of material fact will not alone

defeat a summary judgment motion.  *Id.* at 247–48.

      In deciding whether a genuine issue of material fact exists, the court views the

evidence and draws all inferences in favor of the nonmoving party.  *Miranda v. Wis.*

*Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).  However, when a summary

judgment motion is made and supported by evidence as provided in Rule 56(c), the

nonmoving party may not rest on mere allegations or denials in its pleadings but "must

set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P.

56(e).

## IV.   Statement of Facts

1.     On March 2, 2004, the Crime Action Team of the IPD received an anonymous tip
   from Crime Stoppers of Central Indiana about a man allegedly soliciting sex from
   underage girls.  (Affidavit for Probable Cause "P.C. Affidavit" at 1, Defendants'
   Motion for Summary Judgment and Designation of Evidence Ex. 2).

2.     The tip also stated that this man was a white male approximately fifty (50) years of
   age named Garry Mason.  (*Id.*).

3.     The anonymous informant stated that Mason would allegedly bring young girls
   between the ages of fourteen (14) and seventeen (17) to his residence at 3038
   South Chase Street in Indianapolis, Indiana, and pay them for sex.  (*Id.*).

4.     The anonymous tipster also stated that Mason drove a tan Mazda pickup truck.

(*Id.*).

5.      After receiving the tip from Crime Stoppers, it was confirmed through a records

search that Garry Lee Mason, a fifty-one year-old white male, was the resident of

3038 South Chase Street.  (*Id.*).  A photo of Mason was also obtained from the

Bureau of Motor Vehicles.  (*Id.*).

6.      On March 7, 2004, Detectives McGlinsey and Starks observed the residence at

3038 South Chase Street in Indianapolis and saw a tan Mazda pickup truck parked

in front of the house.  (*Id.*).

7.      The next day, March 8, 2004, surveillance of the house at 3038 South Chase Street

was initiated, and a man matching Mason's description was observed entering and

leaving the residence.  (*Id.*).  However, the evidence does not indicate who

observed Mason at his home on March 8, 2004, although presumably it was a

member of IPD's Crime Action Team since it received the anonymous tip from

Crime Stoppers.

8.      On March 9, 2004, the following day, Detectives Starks and Hildebrand observed

Mason leave his residence at 3038 South Chase Street at about 5:00 p.m. with a

then unidentified teenage girl.  (*Id.* at 1–2).  Both Mason and the girl got into

Mason's tan Mazda pickup truck, and they drove away.  (*Id.* at 2).

9.      Detectives Starks and Hildebrand followed Mason and saw him drop the teenaged

girl off at approximately 5:30 p.m. in a neighborhood south of Fountain Square in

Indianapolis.  (*Id.*).

10.  When she exited Mason's pickup truck, Detectives Starks and Hildebrand observed the girl as a thin white female with blond hair who was approximately fifteen (15) to seventeen (17) years old.  (*Id.*).

11.  Based on these facts, Detective McGlinsey prepared a probable cause affidavit and drafted a search warrant.  (Deposition of Sheryl McGlinsey "McGlinsey Dep." at 11, 35, Defendants' Motion for Summary Judgment and Designation of Evidence Ex. 2).  The search warrant was to look for child pornography, including photographs, internet files, and DVDs.  (P.C. Affidavit at 2; Search Warrant, Defendants' Motion for Summary Judgment and Designation of Evidence Ex. 4).

12.  At the bottom of both pages of the probable cause affidavit was the statement: "I swear (affirm), under penalty of perjury as specified by IC 35-44-2-1, that the foregoing representations are true."  (P.C. Affidavit at 1, 2).  Following that statement, Detective McGlinsey signed on the line for the "Affiant."  (*Id.*).

13.  On March 11, 2004, she presented both documents to Marion County Court Commissioner Jane Conley ("Commissioner Conley").  (McGlinsey Dep. at 10–11, 34–35).  Commissioner Conley read and signed the probable cause affidavit and the search warrant in Detective McGlinsey's presence.  (*Id.* at 11, 35).

14.  After she signed the probable cause affidavit, Commissioner Conley neither asked for a copy of the probable cause affidavit nor did Detective McGlinsey leave a copy of the probable cause affidavit with Commissioner Conley.  (*Id.* at 41).

15.  Detective McGlinsey did not file the probable cause affidavit with the clerk of the court before the search warrant was executed.  (*Id.*).  The probable cause affidavit was not filed until April 8, 2004, the same day the search warrant inventory return was filed.  (*Id.*).

16.  Detective McGlinsey was trained to file a probable cause affidavit in support of a search warrant after the search warrant was executed.  (*Id.* at 42).  The policy of the IPD is to file probable cause affidavits supporting search warrants when the search warrant is returned.  (Thomas Farlow-Lieutenant Dave Young March 19, 2004, Telephone Conversation at 2, lns. 12–17, Appendix of Plaintiff Garry Mason Ex. 2).

17.  The search warrant was executed on March 15, 2004, between 9:00 and 9:15 a.m. (McGlinsey Dep. at 35).

18.  The IPD officers executing the warrant arrived at the house and first banged on the door, announcing that it was the police with a search warrant.  (*Id.* at 36–37). After no one answered the door, the police battered the door open.  (*Id.* at 37). Mason was on the other side of the door and suffered a superficial injury on his arm requiring no medical attention from a piece of the door frame.  (Deposition of Garry Mason "Mason Dep." at 91, Defendants' Motion for Summary Judgment and Designation of Evidence Ex. 3).  Mason was also handcuffed during the search for the officers' safety, which left Mason's hands a little red.  (*Id.* at 100).

19.  During the execution of the search warrant, Mason told police that he had

6

marijuana in his house and directed the police to the kitchen cupboard, where the police found marijuana. (*Id.* at 143–44, ). Mason was arrested that day for possession of marijuana. (McGlinsey Dep. at 61).

20. During the search, the police also found and seized videos and photographs, some of which showed Mason having sex with women. (*Id.*).

21. The police learned the identity of a girl from the videos and asked Mason about her. (*Id.* at 31). Allegedly Mason began having sex with the girl when she was sixteen and had agreed to pay her for sex. (Mason Dep. at 77, 80, 125). The video of the girl was made in October or November 2002, when she was sixteen. (*Id.* at 53).

22. From the police investigation of this matter, Mason was charged with promoting prostitution, child exploitation, and possession of marijuana. (*Id.* at 111).

23. On July 29, 2004, Marion County Superior Court granted a motion to suppress evidence gathered during the March 15, 2004, search at Mason's residence because it found that the probable cause affidavit and search warrant lacked probable cause. (*Id.* at 113; *State v. Mason*, 829 N.E.2d 1010, 1015 (Ind. Ct. App. 2005)).

24. All charges against Mason were dismissed after Marion County Superior Court granted the motion to suppress. (Mason Dep. at 114–15).

25. The Indiana Court of Appeals upheld Marion County Superior Court's decision in granting Mason's motion to suppress the evidence obtained during the March 15,

2004, search in *State v. Mason*, 829 N.E.2d 1010 (Ind. Ct. App. 2005).

**V.      Discussion**

Defendants' summary judgment motion seeks judgment on all possible claims in Mason's complaint, including those against the IPD detectives and Chief Barker[1] individually for unreasonable search and seizure and excessive force in violation of the Fourth Amendment and false arrest, negligence, and trespass in violation of state law; those against the City of Indianapolis and the IPD for a custom or practice that violates the Fourth Amendment; and those against the MDC arising from a zoning ordinance charge against Mason that Mason alleges was brought to harass him.

**A.      Fourth Amendment Claims against the IPD Detectives**

**1.      Search**

**a.      Probable Cause**

Mason first argues that he is entitled to damages under § 1983 because the search warrant executed at his house on March 15, 2004, was not based on probable cause and thus violated the Fourth Amendment. In the criminal case against Mason, both the Marion County Superior Court and the Indiana Court of Appeals determined that

---

[1] Although Plaintiff brings his claims against Chief Barker in addition to the individual IPD officers, the facts show that Chief Barker had no role in the search of Plaintiff's house or his subsequent arrest. Individuals cannot be liable in § 1983 actions merely for their supervisory roles of others. *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000). Rather, they must have caused or participated in the alleged constitutional deprivation to face liability. *Id*. Because Plaintiff has not asserted that Chief Barker caused the search of his house to occur or otherwise participated in the alleged deprivation of his constitutional rights, Defendants' motion for summary judgment on Plaintiff's claims against Chief Barker is granted.

probable cause was lacking to issue the search warrant and thus the evidence obtained in the search was suppressed.  *Mason*, 829 N.E.2d at 1018.  However, a state court's determination of probable cause in a criminal case is not conclusive on the same issue in a subsequent civil action under § 1983 in federal court.  *Booker v. Ward*, 94 F.3d 1052, 1057 (7th Cir. 1996).  As such, the court will proceed with an independent analysis of whether probable cause existed for the issuance of a search warrant in this case.

The Fourth Amendment protects individuals against unreasonable searches and seizures and provides that warrants shall issue only upon probable cause.  U.S. CONST. amend IV.  Probable cause exists "if the facts and circumstances within [an officer's] knowledge . . . were sufficient to warrant a prudent man in believing [Mason] had violated the law."  *Edwards v. Cabrera*, 58 F.3d 290, 292 (7th Cir. 1995) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).  Where the facts are undisputed, the question of whether probable cause existed is a question of law.  *Cervantes v. Jones*, 188 F.3d 805, 811 (7th Cir. 1999), *overruled on other grounds*.

In *Illinois v. Gates*, the Supreme Court held that where the police receive a tip from an anonymous informant, the court must look at the totality of the circumstances to determine whether probable cause existed to issue a warrant.  462 U.S. 213, 238 (1983). The court stressed: "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules."  *Gates*, 462 U.S. at 232.  "The import of *Gates* is that whether officers had probable cause to arrest is to be considered in light of all information

9

available to them at the time of the arrest, including the tip itself together with knowledge of the informant, any corroboration of the tip, and any other information uncovered by or related to the arresting officer." *Edwards*, 58 F.3d at 293.

The Supreme Court determined in *Gates* that probable cause existed for a warrant when the police received an anonymous letter alleging that a couple in the community made a living from dealing drugs.  462 U.S. at 243–46.  The Court's finding of probable cause, absent any knowledge about the veracity of the informant, hinged on the fact that the letter contained specific details about future events not normally predicted, and the police were able to corroborate the accuracy of those predictions as the events occurred. *Id.*

The Seventh Circuit, relying on the Supreme Court decision in *Gates*, likewise upheld the finding of probable cause for a warrant based on a tip by an anonymous informant in *Edwards v. Cabrera*, 58 F.3d 290 (7th Cir. 1995).  In *Edwards*, a city bus driver, who did not give his name, reported to the police that he thought he had witnessed a drug transaction between five black men at a bus station in the area.  *Id.* at 292.  An officer arrived at the scene, saw the reported group of men, caught up with and questioned a couple of the individuals, and with their consent, searched for and located drugs in one of their garment bags.  *Id.*  The Seventh Circuit held that the officer had probable cause to arrest the two individuals she questioned reasoning: the seemingly innocent activity of a group of men gathered at a bus station became suspicious in light of the bus driver's tip; the bus driver maintained a level of reliability as a citizen informant

10

who could face possible repercussions of a false report; the bus driver was not completely

anonymous because presumably the officers could have learned his identity from his

employer; and the officer was able to corroborate the tip in substantial part.  *Id*. at 294.

In the present case, Crime Stoppers received a wholly anonymous tip by telephone,

which it then forwarded to the IPD.  The tip gave Mason's name, approximate age,

address, vehicle make and color, and further alleged that Mason would bring underage

girls to his house and pay them for sex.  Through their records investigation, the police

verified that a fifty-one year old man named Garry Mason had an address at 3038 South

Chase Street in Indianapolis, as provided in the tip.  Surveillance indicated that a tan

Mazda pickup was parked in front of the residence on Chase Street, which also confirmed

Mason's vehicle description provided in the tip.  However, the police's corroboration of

Mason's alleged criminal activity is less precise.  The police saw a man matching

Mason's description, obtained from his BMV photo, leave the Chase Street residence

with a girl between the ages of fifteen and seventeen, drive the girl to a neighborhood

approximately thirty minutes away, and drop her off.

While it is true that "[s]eemingly innocent activity [becomes] suspicious in light of

the initial tip," *Edwards*, 58 F.3d at 293–94 (quoting *Gates*, 462 U.S. at 243 n.13), the

police surveillance of a teenage girl leaving Mason's house and riding in the car with

Mason in light of all the circumstances and the allegations in the tip is not enough to

create probable cause of criminal activity to support a search warrant.  First, there is no

evidence from which the court could determine the veracity of the informant.  Because

the informant was wholly anonymous, the police would not know whether the informant had provided them accurate information in the past, and unlike *Edwards*, the police had no way of learning the informant's identity, as the tip was received by an anonymous phone call.  As the court must consider the totality of the circumstances, no knowledge of the informant's veracity does not, on its own, prevent a finding of probable cause.

Another consideration is the informant's basis of knowledge.  While an informant may not say how he or she learned of the information, the specificity of the information provided or the predictions the tip makes may be an indication that the informant had personal knowledge of the alleged criminal activity.  *See Gates*, 462 U.S. at 245.  Further, "because an informant is right about some things, he is more probably right about other facts."  *Gates*, 462 U.S. at 244 (quoting *Spinelli v. United States*, 393 U.S. 410, 427 (1969)).  Unlike the tip in *Gates*, which predicted specific future events thus giving credibility to the allegation that the couple was in fact dealing drugs, the tip in this case provided easily obtainable information.  A casual acquaintance, such as a neighbor or co-worker, may have known Mason's name, approximate age, vehicle make and color, and address.  However, knowledge of this general information does not show an intimate knowledge of Mason's life, which would indicate that an allegation of criminal activity is also true.

However, the court's inquiry does not end there, as it must also evaluate to what extent the police were able to corroborate the information in the tip.  Here, the police corroborated the general information through a records investigation and surveillance of

Mason's house.  Also through surveillance, the police corroborated the fact that Mason hosted a teenage girl at his home.  However, the police did not corroborate the fact that Mason had sexual relations with the girl or that he had paid her for sex.  In stating this, the court does not mean to indicate that with every anonymous tip, the police have to witness the alleged criminal activity before probable cause exists for a search or arrest warrant.  However, in this case, the police saw one teenage girl one day leave Mason's house and get into Mason's truck.  It would be a different case, for example, if the police had witnessed some sort of affection between Mason and the girl, had witnessed some exchange of money between the two, or had extended the investigation and seen Mason consistently hosting teenage girls at his home.

Considering these factors together in the totality of the circumstances, the court finds that probable cause to issue a search warrant was lacking in this case.  In considering the facts of a particular situation, including a tipster's veracity and basis of knowledge, the Supreme Court set forth: "[A] deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability."  *Gates*, 462 U.S. at 233.  Here, the tip was received from a wholly anonymous informant; the tip contained somewhat general information about the target, except for the allegation of criminal activity; the police only corroborated that a teenage girl was at Mason's house one day; and no other information regarding Mason was uncovered by the police.  While seeing a teenage girl leaving Mason's house together with the anonymous tip that he was paying teenage girls for sex

13

may raise a suspicion, considering the tip's lack of indicia of reliability together with no other suspicious information uncovered by the police leads the court to the conclusion that probable cause did not exist to issue a search warrant for Mason's house.

### b.   Qualified Immunity

Defendants argue that even if the court determines probable cause was lacking for a search warrant, they are entitled to qualified immunity.  Whether a defendant is entitled to qualified immunity is a two-step analysis, determining whether the facts show that the defendant's conduct violated a constitutional right, and if so, whether the right that the defendant violated was clearly established.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001). [W]hen an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," *U.S. v. Leon*, 468 U.S. 897, 920 (1984), the officer is entitled to qualified immunity.  *Malley v. Briggs*, 475 U.S. 335, 344 (1986). However, qualified immunity is not proper in cases where the issuing magistrate or judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth."  *Leon*, 468 U.S. at 923; *Malley*, 475 U.S. at 344–45.

In this case, the Defendant detectives investigated the anonymous tip, corroborated part of the information, prepared a probable cause affidavit based on that investigation, and took the affidavit to Commissioner Conley to review for a search warrant.  There is no evidence that Detective McGlinsey falsified information in her probable cause affidavit or that the other investigating detectives may have falsified information during

14

their surveillance or records investigation.  While this court has determined that probable

cause was lacking to issue the search warrant, there is nothing in this case to indicate that

the officers did not act in good faith in their investigation of Mason or in preparing the

probable cause affidavit.  As such, the Defendant detectives are entitled to qualified

immunity.  Defendant's motion for summary judgment on Mason's § 1983 claim for

unlawful search under the Fourth Amendment is therefore **GRANTED**.

### 2.    Seizure

Mason also alleges that he is entitled to damages under § 1983 because his arrest

during the execution of the search warrant was without probable cause and thus violated

the Fourth Amendment.  The existence of probable cause for arrest absolutely bars a §

1983 claim for false arrest.  *Potts v. City of Lafayette*, 121 F.3d 1106, 1113 (7th Cir.

1997).  Further, the exclusionary rule, which excludes evidence at trial that was obtained

through illegal police conduct, does not apply in § 1983 cases.  *See Reich v. Minnicus*,

886 F. Supp. 674, 680, 682 (S.D. Ind. 1993).

Although probable cause was lacking for issuance of the search warrant, that fact

alone does not mean that Mason's subsequent arrest during the execution of the search

warrant was unconstitutional.  In this case, when the police entered Mason's house

pursuant to the illegal search warrant, Mason told them that he was in possession of

marijuana; he told them that it was located in the kitchen cupboard; and the police then

found the marijuana in the cupboard.  Mason's admission that he was in possession of

marijuana coupled with the police's location of the marijuana in Mason's house clearly

gave the police probable cause to arrest Mason for possession of marijuana.  As such, Defendants' motion for summary judgment on Mason's unlawful arrest under the Fourth Amendment is **GRANTED**.

### 3. Excessive Force

Defendants also move for judgment on any claim for excessive force Mason may have under the Fourth Amendment.  However, Mason does not respond to Defendants' excessive force argument.  As such, his excessive force claim is waived.  *See Palmer v. Marion County*, 327 F.3d 588, 597–98 (7th Cir. 2003) (noting that claims to which the non-moving party fails to respond on summary judgment are deemed abandoned).  Defendants' motion for summary judgment on Mason's excessive force claim is therefore **GRANTED**.

### B. Fourth Amendment Claim against the IPD and the City of Indianapolis

At the outset, the court notes that Mason filed his § 1983 suit against both the IPD and the City of Indianapolis.  Because a city's police department "is merely a vehicle through which the city government fulfills its policy functions," *Jones v. Bowman*, 694 F. Supp. 538, 544 (N.D. Ind. 1988), it is not a proper defendant in a civil rights suit under § 1983.  *Id*.  As such, Defendants' motion for summary judgment with respect to the IPD is **GRANTED**.

The court now turns to Mason's claim against the City of Indianapolis.  Municipalities and other local government units may not be held liable pursuant to § 1983 solely under a theory of respondeat superior.  *Monell v. Dept. of Social Svcs. of New York*,

16

436 U.S. 658, 690–91 (1978).  However, where a plaintiff can show that a municipality's policy or custom leads to the deprivation of the plaintiff's constitutionally protected interests, then the municipality may be held liable under § 1983.  *Jones v. City of Chicago*, 787 F.2d 200, 203 (7th Cir. 1986) (citing *Monell*, 436 U.S. at 690–94).  A "policy" or "custom" may take one of three forms:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional inquiry was caused by a person with 'final policymaking authority.'

*Garrison v. Burke*, 165 F.3d 565, 571–72 (7th Cir. 1999) (quoting *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 734–35 (7th Cir. 1994)).

In this case, Mason alleges that the IPD had a policy or custom of waiting to file probable cause affidavits and the corresponding search warrants until the search warrant was returned.  He alleges that the delay in filing these documents violates Indiana's warrant statute, Indiana Code § 35-33-5-2, which in turn violates the "oath or affirmation" requirement of the Fourth Amendment.  Defendants do not dispute that Detective McGlinsey followed the custom or policy of the City of Indianapolis in waiting to file the probable cause affidavit and search warrant until the warrant was returned.  However, they dispute that this delay violated the oath or affirmation requirement of the Fourth Amendment.

Indiana Code § 35-33-5-2 states in pertinent part: "Except as provided in section 8

of this chapter, no warrant for search or arrest shall be issued until there is *filed with the judge* an affidavit:  (1) particularly describing:  (A) the house or place to be searched and the things to be searched for . . . ."  IND. CODE § 35-33-5-2(a)(1)(A) (emphasis added). The Fourth Amendment to the United States Constitution states in pertinent part: "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation."  U.S. CONST. amend. IV.  Courts in Indiana have equated the "filing with the judge" requirement of § 35-33-5-2 with the oath or affirmation requirement of the Indiana Constitution, finding that a failure to file the probable cause affidavit and search warrant with the clerk before executing the search warrant violates the oath or affirmation requirement.  *State v. Rucker*, 861 N.E.2d 1240, 1242 (Ind. Ct. App. 2007); *Mason*, 829 N.E.2d at 1021; *Thompson v. State*, 130 N.E.2d 412, 413 (1921).[2]

Whether Detective McGlinsey violated Indiana Code § 35-33-5-2 by waiting to file the probable cause affidavit and search warrant until she filed the return twenty-eight (28) days after the search warrant was executed is a question of no import to this court. Section 1983 protects individuals against constitutional violations, not violations of state law.  *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003).  Thus, the relevant question in this case is solely whether Detective McGlinsey's failure to timely file the affidavit and

---

[2] While the oath or affirmation provisions of the Fourth Amendment and the Indiana Constitution are almost identical, *compare* IND. CONST. art. I, § 11, *with* U.S. CONST. amend IV, the relevant provision at issue in this case is the Fourth Amendment.  To the extent that the Indiana decisions purport to interpret the Federal Constitution, this court is not bound by those interpretations.  *Ace Cycle World, Inc. v. Am. Honda Motor Co.*, 788 F.2d 1225, 1228 (7th Cir. 1986) ("Clearly, a federal court need not defer to a state's interpretation of the Federal Constitution.").

search warrant violates the Fourth Amendment's oath and affirmation requirement.

"An 'Oath or affirmation' is a formal assertion of, or attestation to, the truth of what has been, or is to be, said." *United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) (quoting *United States v. Turner*, 558 F.2d 46, 50 (2d Cir. 1977)).  Where a person manifests an intention to be under oath, that person is in fact under oath.  *Id*.  The purpose of the Fourth Amendment's oath or affirmation requirement is "that those who have been impressed with the moral, religious or legal significance of formally undertaking to tell the truth are more likely to do so than those who have not made such an undertaking or been so impressed."  *Id*. (quoting *Turner*, 558 F.2d at 50).

In this case, Detective McGlinsey signed the probable cause affidavit as the affiant following the oath clause.  Her signing both pages of the affidavit, while swearing under penalty of perjury that she was telling the truth, satisfies the Fourth Amendment's oath or affirmation requirement.  It manifests her intention to tell the truth and satisfies the purpose behind the Fourth Amendment of impressing upon Detective McGlinsey the legal significance of formally undertaking to tell the truth.

The IPD's policy or custom of waiting to file the probable cause affidavit and warrant until after the warrant is executed has no bearing on whether the affiant police officer swears under penalty of perjury that the facts in his or her probable cause affidavit supporting the warrant are true.  The purpose behind the Fourth Amendment's oath or affirmation requirement is to ensure that the officer providing the facts to support a warrant is telling the truth, not to ensure that the documents are properly and timely filed.

As such, Defendants' motion for summary judgment on Mason's Fourth Amendment claim against the City of Indianapolis is **GRANTED**.

### C.    State Law Claims

Mason also asserts state law claims of false arrest, trespass, and negligence against Defendants.  As set forth in Section V.A.2.*, supra*, Defendants had probable cause to arrest Mason.  Thus his state law claim for false arrest must fail.  *Miller v. City of Anderson*, 777 N.E.2d 1100, 1104–05 (Ind. Ct. App. 2002) ("[I]f the plaintiff in a false arrest action fails to demonstrate the absence of probable cause, or if the record as a whole reflects probable cause for the arrest, then the plaintiff's case must fail.")

Turning to the claims of negligence and trespass under Indiana law, the Indiana Tort Claims Act provides immunity from loss to government employees acting within the scope of their employment if the loss results from enforcing a law, unless the act of enforcement constitutes false arrest.  IND. CODE § 34-13-3-3(8).  In this case, Defendants were clearly acting within the scope of their employment as police officers when they executed the search warrant at Mason's residence.  Further, the court has found that no false arrest occurred during the execution of the search warrant.  As such, Defendants are immune from Mason's claims for negligence and trespass under Indiana law.

Defendants' motion for summary judgment on Mason's state law claims for false arrest, trespass, and negligence is therefore **GRANTED**.

### D.    Claim against the Metropolitan Development Commission

Although Plaintiff's complaint included a claim against the MDC for allegedly

depriving Plaintiff of his constitutional rights, Plaintiff concedes in his response to Defendants' motion for summary judgment that his payment of the fine assessed by the MDC; his lowering of the fence violating the zoning regulations; and his failure to appeal the ruling by the MDC are dispositive of his § 1983 claim against the MDC.  As such, Defendants' summary judgment motion is **GRANTED** on Plaintiff's claim against the MDC.

**VI.    Conclusion**

For the reasons set forth above, Defendants' motion for summary judgment (Docket # 41) is **GRANTED** in its entirety.

**SO ORDERED** this 11th day of September 2007.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic copies to:

Loren Jay Comstock
lorenjcomstock1@yahoo.com

John F. Kautzman
RUCKELSHAUS ROLAND KAUTZMAN BLACKWELL & HASBROOK
jfk@rucklaw.com

21

James B. Osborn
OFFICE OF CORPORATION COUNSEL
josborn@indygov.org

John C. Ruckelshaus
RUCKELSHAUS ROLAND KAUTZMAN BLACKWELL & HASBROOK
jcr@rucklaw.com

Ian L. Stewart
OFFICE OF CORPORATION COUNSEL
istewart@indygov.org